TROY LAW, PLLC
41-25 Kissena Boulevard Suite 103
Flushing, NY 11355
Tel: (718) 762-1324
*Attorney for the Plaintiffs and proposed FLSA Collective*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

HISAMI ABE and
TAISEI ABE,
*on their own behalf and on behalf of others similarly*
*situated*

                              Plaintiffs,

             v.

YAMAGUCHI & FRIENDS, INC.
    d/b/a Taka Sushi;
TAKAFUMI YAMAGUCHI, and
RIE YAMAGUCHI

                          Defendants.

------------------------------------------------------------------x

**Case No. 22-cv-03164**

**29 U.S.C. § 216(b)**
**COLLECTIVE ACTION**

<u>**COMPLAINT**</u>

**DEMAND FOR JURY TRIAL**

      Plaintiffs HISAMI ABE and TAISEI ABE (hereinafter referred to as Plaintiffs), on

behalf of themselves and others similarly situated, by and through their attorney, Troy Law,

PLLC, hereby bring this complaint against Defendants YAMAGUCHI & FRIENDS, INC. d/b/a

Taka Sushi; TAKAFUMI YAMAGUCHI, and RIE YAMAGUCHI, and allege as follows:

<u>**INTRODUCTION**</u>

      1.    This action is brought by the Plaintiffs HISAMI ABE, and TAISEI ABE, on

behalf of themselves as well as other employees similarly situated, against the Defendants for

alleged violations of the Fair Labor Standards Act, (FLSA) 29 U.S.C. § 201 *et seq.* and New

York Labor Law (NYLL), arising from Defendants' various willful, malicious, and unlawful

employment policies, patterns and practices.

2.      Upon information and belief, Defendants have willfully, maliciously, and intentionally committed widespread violations of the FLSA and NYLL by engaging in pattern and practice of failing to pay its employees, including Plaintiffs, minimum wage for each hour worked and overtime compensation for all hours worked over forty (40) each workweek.

3.      Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid wages and unpaid overtime wages, (2) misappropriated tips, (3) liquidated damages, (4) prejudgment and post-judgement interest; and or (5) attorney's fees and cost.

4.      Plaintiffs further allege pursuant to NYLL § 650 et seq. and 12 New York Codes, Rules and Regulations § 146 (NYCRR) that they are entitled to recover from the Defendants: (1) unpaid wages and unpaid overtime compensation, (2) misappropriated tips, (3) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (4) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (5) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under NYLL § 190 et seq., § 650 et seq., and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (6) 9% simple prejudgment interest provided by NYLL, (7) post-judgment interest, and (8) attorney's fees and costs.

## JURISDICTION AND VENUE

5.      This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367(a).

6.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

7.      From on or about May 15, 2019 to on or about February 15, 2022 and again from September 21, 2021 to the present day, Plaintiff HISAMI ABE was employed by Defendants to work as a waitress, receptionist, and packer for Defendants at 821 Carman Ave, Westbury, NY 11590.

8.      From on or about September 21, 2021 to the present day, Plaintiff TAISEI ABE was employed by Defendants to work as a packer and receptionist on Fridays and Saturdays  for Defendants at 821 Carman Ave, Westbury, NY 11590.

## DEFENDANTS

### *Corporate Defendant*

9.      Defendant YAMAGUCHI & FRIENDS, INC. d/b/a Taka Sushi is a domestic business corporation organized under the laws of the State of New York with a principal address at 821 Carman Ave, Westbury, NY 11590.

10.     YAMAGUCHI & FRIENDS, INC. d/b/a Taka Sushi is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000)

per year.

11.    YAMAGUCHI & FRIENDS, INC. d/b/a Taka Sushi purchased and handled goods moved in interstate commerce.

***Owner/Operator Defendants***

12.    The Individual Defendants are officers, directors, managers and/or majority shareholders or owners of the Corporate Defendant and being among the ten largest shareholders and/or LLC members, are individually responsible for unpaid wages under the New York Business Corporation Law and Limited Liability Company Law. NYBSC § 630(a), NYLLC § 609(c).

13.    Taka Sushi is a family-owned and operated Japanese restaurant that specializes in sushi and sashimi cuisine.

14.    The two owners/ operators are husband TAKAFUMI YAMAGUCHI and wife RIE YAMAGUCHI.

15.    TAKAFUMI YAMAGUCHI known as "Taka-San" (a title of respect added to a name in Japanese) or Boss to Plaintiff and Owner, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at YAMAGUCHI & FRIENDS, INC. d/b/a Taka Sushi.

16.    TAKAFUMI YAMAGUCHI hired Taka Sushi employees, including waitress SETSUKO, waiter IAN, as well as the sushi chefs HORI and OU.

17.    TAKAFUMI YAMAGUCHI interviewed and hired Plaintiff HISAMI ABE.

18.    TAKAFUMI YAMAGUCHI set the schedule for all Taka Sushi employees, including Plaintiffs' work schedule.

19.     TAKAFUMI YAMAGUCHI told Taka Sushi customers that because of the lockdown, Taka Sushi was closed.

20.     On or around September 21, 2021, TAKAFUMI YAMAGUCHI invited Plaintiff HISAMI ABE to return to work at Taka Sushi.

21.     TAKAFUMI YAMAGUCHI works as the sushi chef at Taka Sushi.

22.     TAKAFUMI YAMAGUCHI acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with YAMAGUCHI & FRIENDS, INC. d/b/a Taka Sushi.

23.     RIE YAMAGUCHI known as "Lady Boss" to Plaintiff and Owner, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at YAMAGUCHI & FRIENDS, INC. d/b/a Taka Sushi.

24.     RIE YAMAGUCHI sets the pay of Taka Sushi employees, including Plaintiffs' pay.

25.     RIE YAMAGUCHI deducted pay for employee lateness for as little as five (5) minutes late.

26.     RIE YAMAGUCHI hired a dishwasher of Italian descent after the lockdown was lifted, around November or December of 2021.

27.     This dishwasher lasted for a week, because she was unable to bake gyoza (Japanese dumpling) and fry the Japanese shrimp tempura.

28.     RIE YAMAGUCHI said "I hate her. She's so stupid. I want to fire her tonight" to TAKAFUMI YAMAGUCHI and TAKAFUMI YAMAGUCHI said, "Okay."

29.     That night, TAKAFUMI YAMAGUCHI fired the dishwasher of Italian descent.

30.     RIE YAMAGUCHI pays the Taka Sushi employees every two weeks, usually on Saturdays but sometimes on Fridays as well.

31.     RIE YAMAGUCHI computes and distributes the tips in cash after the restaurant closes each day.

32.     RIE YAMAGUCHI works as the cashier and kitchen staff at Taka Sushi.

33.     RIE YAMAGUCHI works as a day-to-day manager to ensure quality food services is provided to Taka Sushi customers.

34.     RIE YAMAGUCHI overlooks Taka Sushi to the most minute details.

35.     For instance, RIE YAMAGUCHI directed TAISEI ABE to count exactly six tofu pieces to put in the miso soup to be served to Taka Sushi customers.

36.     RIE YAMAGUCHI directed TAISEI ABE to put less Japanese wine in the wine to be served to Taka Sushi customers.

37.     RIE YAMAGUCHI directed HISAMI ABE to put exactly two scoops of dressing over the salad to be served to Taka Sushi customers.

38.     RIE YAMAGUCHI acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with YAMAGUCHI & FRIENDS, INC. d/b/a Taka Sushi.

## **STATEMENT OF FACTS**

39.     Defendants committed the following alleged acts knowingly, intentionally

willfully, and maliciously against the Plaintiffs and the FLSA Collective Plaintiffs.

40. Pursuant to NYCRR Part 146-2.2 and 29 USC § 203(m), an employer cannot take credit towards the basic minimum wage if a service employee or food service worker has not received notification of the tip credit.

41. At all relevant times, Defendants knowingly, willfully, and maliciously failed to pay Plaintiffs and similarly situated employees at least the New York minimum wage for each hour worked.

42. At all relevant times, Defendants knowingly, willfully, and maliciously failed to pay Plaintiffs their lawful overtime compensation of one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

43. While employed by Defendants, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

44. Defendants failed to keep full and accurate records of Plaintiffs' hours and wages.

45. Upon information and belief, Defendants failed to keep full and accurate records in order to mitigate liability for their wage violations. Defendants never furnished any notice of their use of tip credit.

46. At all relevant times, Defendants knowingly, willfully, and maliciously failed to provide Plaintiffs and similarly situated employees with Time of Hire Notice reflecting true rates of pay and payday as well as paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

47. Defendants knew that the nonpayment of overtime pay and New York's "spread of hours" premium for every day in which Plaintiffs worked over ten (10) hours would financially injure Plaintiffs and similarly situated employees and violate state and federal laws.

48. Defendants did not post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, tip credit, and pay day.

*Plaintiff HISAMI ABE*

49. From on or about May 15, 2019 to May 27, 2022, Plaintiff HISAMI ABE was employed by Defendants to work as a waitress at 821 Carman Ave, Westbury, NY 11590.

50. From on or about May 15, 2019 to February 15, 2020, Plaintiff HISAMI ABE's regular work schedule ran from 17:00 to 22:00 for Friday night shifts for five (5) hours each week.

51. From on or about September 21, 2021 to the present day, Plaintiff HISAMI ABE's regular work schedule ran from 11:00 to 14:30 for three and a half (3.5) hours on Tuesdays during the lunch shift; 11:00 to 14:30 for three and a half (3.5) hours for the lunch shift and 17:00 to 21:30 for four and a half (4.5) hours for the dinner shift on Wednesdays; 11:00 to 14:30 for three and a half (3.5) hours for the lunch shift and 17:00 to 21:30 for four and a half (4.5) hours for the dinner shift on Thursdays; 11:00 to 14:30 for three and a half (3.5) hours for the lunch shift and 17:00 to 22:00 for five (5) hours for the dinner shift on Fridays; and 16:30 to 22:00 for five and a half (5.5) hours for dinner shifts on Saturdays for a total of 33.5 hours each week.

52. At all relevant times, there was no break during shifts.

53. At all relevant times, there was a break between shifts on days when Plaintiff

worked "double" shifts (Wednesday, Thursday, and Friday).

54.     At all relevant times, Plaintiff HISAMI ABE was paid eight dollars ($8.00) per hour.

55.     This was below the applicable minimum wage at all relevant times.

56.     Moreover, Plaintiff HISAMI ABE was not paid for all hours worked.

57.     Specifically, between September 21, 2021 to the present day, while she worked on avergae 67 hours every two (2) weeks, she was paid only for around 57 hours of work each week.

58.     It is unclear how Defendants kept track of the employee work time, but Defendants did tell Plaintiff HISAMI ABE that they do not consider time after the close of the restaurant work time even though the employees would need to clean up and continue working before they left.

59.     In 2019, the applicable minimum wage was $12.

60.     In 2020, the applicable minimum wage was $13.

61.     In 2021, the applicable minimum wage was $13.

62.     In 2022, the applicable minimum wage was $13.

63.     Moreover, HISAMI ABE was not paid for all hours worked.

64.     From on or about September 21, 2021 to May 27, 2022 , Plaintiff HISAMI ABE was paid an hourly rate of eight dollars ($8.00).

65.     At all relevant times, Plaintiff HISAMI ABE was not paid overtime pay for overtime work.

66.     At all relevant times, Plaintiff HISAMI ABE was never informed of any tip deductions toward the minimum wage.

67.     Further, at all relevant times, Plaintiff HISAMI ABE had to clean the toilet, prepare the oshibori (towel offered in Japanese restaurants), vacuum the floor, prepare the soy sauce for the dine in customers, prepare the napkins and the chopsticks for the dine in customers, prepare the plastic bag and the soy sauce for the takeout customers, and to go to the basement to bring the beverage and ice cubes.

68.     At all relevant times, Plaintiff HISAMI ABE's non-tipped work exceeds two (2) hours or twenty percent (20%) of Plaintiff's workday.

69.     Further, at all relevant times, Plaintiff HISAMI ABE had her tips misappropriated.

70.     Specifically, for all counter top tips, the waitstaff was required to share 70% with the Defendants/ owners.

71.     This was in spite of the fact that the waitstaff had to bring the dishes to the customers.

72.     In addition, Plaintiff HISAMI ABE was required to pay between thirty dollars ($30) to forty dollars ($40) out of pocket each week for any mistakes in the customer orders.

73.     Throughout her employment, Plaintiff HISAMI ABE was not given a statement with her weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Japanese, Plaintiff's native language.

74.     Throughout her employment, Plaintiff HISAMI ABE was not compensated at least at one-and-one-half her promised hourly wage for all hours worked above forty (40) in each workweek.

75.     Throughout her employment, Plaintiff HISAMI ABE was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at her promised rate.

### Plaintiff TAISEI ABE

76.     From on or about September 21, 2021 to May 27, 2022, Plaintiff TAISEI ABE was employed by Defendants to work as a packer and receptionist at 821 Carman Ave, Westbury, NY 11590.

77.     In addition to his responsibilities as the packer and receptionist, TAISEI ABE would also help to clean and prepare the tables for the dine in customers.

78.     From on or about September 21, 2021 to May 27, 2022, Plaintiff TAISEI ABE's regular work schedule ran from 17:00 to 22:00 for five (5) hours for Friday dinner shifts; and 16:30 to 22:00 for five and a half (5.5) hours for Friday dinner shifts for a total of eleven (11) hours each week.

79.     At all relevant times, Plaintiff TAISEI ABE did not have a fixed time for lunch or for dinner.

80.     At all relevant times, there was no break during shifts for Plaintiff TAISEI ABE.

81.     From on or about September 21, 2021 to May 27, 2022, Plaintiff TAISEI ABE was paid eighteen dollars ($18.00) per hour.

82.  At all relevant times, Plaintiff TAISEI ABE was not paid for all hours worked.

83. Specifically, Plaintiff TAISEI ABE was paid for ten hours and not ten and a half (10.5) hours for the two days that he worked at Taka Sushi.

84.     At all relevant times, Plaintiff TAISEI ABE was never informed of any tip deductions toward the minimum wage.

85.     At all relevant times, Plaintiff TAISEI ABE's non-tipped work exceeds two (2) hours or twenty percent (20%) of Plaintiff's workday.

86.     Further, at all relevant times, Plaintiff TAISEI ABE had his tips misappropriated.

87.     Specifically, at the end of December 2021, Taka Sushi was very busy, so TAISEI ABE received more customer tips.

88.     The "Boss" TAKAFUMI YAMAGUCHI took the tips away from TAISEI ABE.

89.     TAKAFUMI YAMAGUCHI's rationale is that TAISEI ABE is just the packer wrapping up the sushi while he was the sushi chef who makes the sushi.

90.     TAISEI ABE complained that TAKAFUMI YAMAGUCHI should not be taking his tips.

91.     Afterwards, TAKAFUMI YAMAGUCHI and RIE YAMAGUCHI refused to speak with TAISEI ABE.

92.     TAKAFUMI YAMAGUCHI and RIE YAMAGUCHI expressed their "disappointment" in TAISEI ABE to HISAMI ABE.

93.     The YAMAGUCHI's and told her that TAISEI ABE is someone who will pick even two pennies up from the floor.

94.     Previously, in 2020, TAKAFUMI YAMAGUCHI has commented that wage-and-hour attorneys are shit and criminals because they are using the ignorant Spanish people to sue small restaurants. These lawyers are like hyenas.

95.     Thereafter, TAKAFUMI YAMAGUCHI also instructed customers who typically paid good tips directly to TAISEI ABE to instead hand the tips to him.

96.     This included two Japanese customers, Derek, and an accountant known as David.

97.     As a result, TAISEI ABE made less in tips.

98.     Throughout his employment, Plaintiff TAISEI ABE was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Japanese, Plaintiff's native language.

## COLLECTIVE ACTION ALLEGATIONS

99.     Plaintiffs bring this action individually and as class representative individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom were not compensated at their promised hourly rate for all hours worked and at one and one half times their promised work for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## STATEMENT OF CLAIMS

### COUNT I.
**[Violations of the Fair Labor Standards Act—Unpaid Wages
Brought on behalf of the Plaintiffs and the FLSA Collective]**

100.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

101.    At all relevant times, Defendants had a policy and practice of refusing to pay

Plaintiffs in full, and the similarly situated collective action members, for some or all of the hours they worked.

102.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid wage, and in an additional equal amount as liquidated damages.

103.    Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

**COUNT II.**
**[Violation of New York Labor Law—Failure to Pay Minimum Wage and Unpaid Wages Brought on behalf of Plaintiffs]**

104.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

105.    At all relevant times, Plaintiffs are employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

106.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff, and the collective action members, in full for some or all of the hours they worked.

107.    Defendants knowingly, willfully, and maliciously violated Plaintiff's and similarly situated Class Members' rights by failing to pay him minimum wages in the lawful amount for hours worked.

108.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent (25%) of the shortfall under NYLL §§ 190 *et seq.*, §§ 650 *et seq.*, and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

## COUNT III.
### [Violations of the Fair Labor Standards Act—Failure to Pay Overtime
### Brought on behalf of the Plaintiff and the FLSA Collective]

109.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

110.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

111.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

112.    Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

113.    At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

114.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. § 516.4.

115.    Defendants willfully and maliciously failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation

of Plaintiff' and FLSA Collectives' labor.

116.     Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

## COUNT IV.
### [Violation of New York Labor Law—Failure to Pay Overtime
### Brought on behalf of Plaintiffs]

117.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

118.     An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) before April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act, and interest.

119.     At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiffs at one and one-half times the hourly rate the Plaintiffs and the class are entitled to.

120.     Defendant' failure to pay Plaintiffs their overtime pay violated the NYLL.

121.     Defendants' failure to pay Plaintiffs was not in good faith.

## COUNT V.
### [Violation of 29 U.S.C. §203(m) and (t)—Illegal Retention of Tips
### Brought on Behalf Of Plaintiffs and The FLSA Collective]

122.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

123.     A tip is the sole property of the tipped employee regardless of whether the

employer takes a tip credit.

124.    The FLSA prohibits any arrangement between the employer and tipped employee whereby any part of the tip received becomes the property of the employer.

125.    Retaining portions of the tips to unjustly enrich the Managers and/or Owner/Operator Defendants or using portion of the tips to pay non-tipped employees is prohibited under the FLSA.

## COUNT VI.
### [Illegal Tip Retention, NYLL §146-2.18 and NYLL §146-2.20
### Brought on behalf of Plaintiffs]

126.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

127.    Section 196-d of the New York State Labor Law prohibits employers from demanding, accepting, or retaining, directly or indirectly, any part of an employee's gratuity or any charge purported to be a gratuity.

128.    A charge purported to be a gratuity, including charges advertised to be "delivery fee" to customers, must be distributed in full as gratuities to the service employees or food service workers who provided the service.

129.    Employers are prohibited from unjustly enriching themselves by retaining any portion of the tips.

## COUNT VII.
### [FLSA Unlawful Kickbacks 29 U.S.C. 201 et seq.; 29 CFR 531.35
### Brought on Behalf of Plaintiff HISAMI ABE and the FLSA Collective]

130.    Plaintiffs repeat, re-allege and incorporate all allegations in all preceding paragraphs as if fully herein.

131.    Throughout the period covered by the applicable statute of limitations,

defendants have knowingly taken unlawful kickbacks in violation of FLSA and the supporting

regulations of the U.S. Department of Labor. Specifically, Defendants required Plaintiff

HISAMI ABE to pay for mistaken customer orders from her own pocket.

132.    This kickback brings Plaintiff HISAMI ABE's already subpar hourly

minimum wage further below the hourly federal minimum wage.

133.    Plaintiff HISAMI ABE seek and are entitled to recover damages for her unpaid

compensation, liquidated damages as provided by the FLSA, attorneys' fees and costs,

together with such other relief as this Court deems just and proper.

## COUNT VIII.
### [NYLL Unlawful Deductions, NYLL 193 & 196(d)
### Brought on Behalf of Plaintiffs]

134.    Plaintiffs repeat, re-allege and incorporate all allegations in all preceding

paragraphs as if fully herein.

135.    Throughout the period covered by the applicable statute of limitations,

defendants have knowingly taken unlawful kickbacks in violation of New York Labor Law.

Specifically, Defendants required Plaintiff HISAMI ABE to pay for mistaken customer orders

from her own pocket.

136.    This kickback brings Plaintiff HISAMI ABE's already subpar hourly

minimum wage further below the hourly federal minimum wage.

137.    Due to Defendants' willful violations of the NYLL, Plaintiff HISAMI ABE is

entitled to recover from Defendants the amounts of any unlawful deductions, liquidated

damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment

and post-judgment interest.

## COUNT IX.
### [Violation of New York Labor Law—Spread of Time Pay
### Brought on behalf of Plaintiffs]

138.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

139.    The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§ 190, *et seq.*, and §§ 650, *et seq.*, and New York State Department of Labor regulations § 146-1.6.

140.    Defendants' failure to pay Plaintiffs spread-of-hours pay was not in good faith.

## COUNT X.
### [Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice
### Brought on behalf of Plaintiffs]

141.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

142.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

143.    Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

144.    Defendants not only did not provide notice to each employee at Time of Hire,

but failed to provide notice to Plaintiffs even after the fact.

145.    Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

**COUNT XI.**
**[Violation of New York Labor Law—Failure to Provide Wage Statements
Brought on behalf of Plaintiffs]**

146.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

147.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

148.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiffs' payday.

149.    Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs, on behalf of themselves, and on the behalf of the FLSA Collective Plaintiffs, respectfully request that this Court enter a judgment providing the following relief:

a)      Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of his right to join this lawsuit if they believe they were denied premium overtime wages;

b)      Certification of this case as a collective action pursuant to FLSA;

c)      Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their counsel to represent the Collective Action Members;

d)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)      An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)      An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due Plaintiffs and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g)      An award of the misappropriated tips;

h)      An award of liquidated and/or punitive damages as a result of Defendants' knowing, willful, and malicious failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. §216;

i)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

j)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

k)      An award of liquidated and/or punitive damages as a result of Defendants' willful and malicious failure to overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

l)      An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

m)      The cost and disbursements of this action;

n)      An award of prejudgment and post-judgment fees;

o)      Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

p)      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) and 38(c) of the Federal Rules of Civil Procedures, Plaintiffs demand a trial by jury on all questions of facts.


Dated: Flushing, New York

May 29, 2022

TROY LAW, PLLC
*Attorneys for the Plaintiffs, proposed FLSA Collective*

/s/ John Troy
John Troy
Aaron Schweitzer
Tiffany Troy