UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Hisami Abe and Taisei Abe, | |
| Plaintiffs, | 22-cv-3164 (NRM) (ARL) |
| v. | **MEMORANDUM AND ORDER** |
| Yamaguchi & Friends, Inc. d/b/a/ Taka Sushi, Takafumi Yamaguchi, and Rie Yamaguchi, | |
| Defendants. | |

Plaintiffs Hisami and Taisei Abe bring this action against their former employer.  They allege numerous violations of federal and New York labor laws, including the New York Wage Theft Prevention Act and federal and state minimum wage and anti-retaliation provisions.  Defendants moved to dismiss the majority of Plaintiffs' claims.  Plaintiffs opposed Defendants' motion and cross-moved to file a Second Amended Complaint,[1] which addresses certain deficiencies identified in Defendants' motion.  The Court inquired whether Defendants wished to re-file their motion to dismiss to address the factual contentions and claims in Plaintiffs' Proposed Second Amended Complaint ("PSAC"). Order dated Dec. 4, 2023. Defendants advised that they would not re-file their motion and requested "that the Court apply

---

[1] While Plaintiffs refer to this document as both a Supplemental Amended Complaint and Second Amended Complaint, the Court refers to the document as the Second Amended Complaint.

1

Defendants' already-briefed arguments to the PSAC."  Letter dated Dec. 11, 2023, ECF No. 56.  The Court now does so.

For the reasons to follow, the Court concludes that the PSAC plausibly alleges minimum wage violations and Wage Theft Prevention Act violations as to Hisami but not Taisei, and plausibly alleges that Defendants retaliated against both Hisami and Taisei.  Accordingly, Defendants' motion is granted in part and denied in part, and Plaintiffs' cross-motion for leave to file the PSAC is granted.

## FACTUAL BACKGROUND

The following facts are taken from Plaintiffs' PSAC, which the Court takes as true for the purposes of this opinion.  PSAC, ECF No. 47-6.

Plaintiffs Hisami Abe and Taisei Abe were previously employed at Defendant Yamaguchi & Friends, Inc. d/b/a Taka Sushi (hereinafter "Taka Sushi"), a Japanese restaurant owned and operated by Defendants Takafumi Yamaguchi and Rie Yamaguchi.  *Id.* ¶¶ 7–9, 13–14.  Takafumi worked as the chef at Taka Sushi, *id.* ¶ 21, and Rie worked as a day-to-day manager, *id.* ¶ 33.

## I.    Plaintiff Hisami

Hisami worked for Defendants as a waitress during three separate time periods.  During the first period of employment — from May 15, 2019 to February 15, 2020 — Hisami worked at Taka Sushi on Fridays from 5:00 PM to 10:00 PM, for a total of five hours each week.  *Id.* ¶ 47.  Defendants paid her $7.00 per hour.  *Id.* ¶

54.[2]  It appears that Taka Sushi closed sometime thereafter due to the COVID-19 pandemic and that Takafumi invited Plaintiff to return to work at the restaurant on September 21, 2021, after it reopened.  *Id.* ¶¶ 19–20.  During the second period of employment — from September 21, 2021 to May 27, 2022 — Defendants paid Hisami $8.00 per hour,[3] and Hisami worked a total of 33.5 hours at Taka Sushi each week: from 11:00 AM to 2:30 PM on Tuesdays, 11:00 AM to 2:30 PM and 5:00 PM to 9:30 PM on Wednesdays, 11:00 AM to 2:30 PM and 5:00 PM to 9:30 PM on Thursdays, 11:00 AM to 2:30 PM and 5:00 PM to 10:00 PM on Fridays, and 4:30 PM to 10:00 PM on Saturdays.  *Id.* ¶¶ 48, 55.  Although Hisami worked on average 67 hours every two weeks during this period, Defendants only paid her for approximately 57 hours of work.[4]  *Id.* ¶ 58.  Moreover, Defendants told Hisami that "they do not consider time after the close of the restaurant work time even though the employees would need to clean up and continue working before they left."  *Id.* ¶ 59.

---

[2] While the PSAC alleges that Hisami worked for Defendants "[f]rom on or about May 15, 2019, to February 15, 2020," PSAC ¶ 47, it also alleges  that Defendants paid Hisami $7.00 per hour "[f]rom on or about May 15, 2019 to March 15, 2020," *id.* ¶ 54.

[3] Despite alleging that Hisami resumed working at Taka Sushi on or around September 21, 2021, PSAC ¶ 48, the PSAC alleges that Defendants paid Hisami $7.00 per hour until March 15, 2020, *id.* ¶ 54, and $8.00 per hour beginning on "May October 11, 2021," *id.* ¶ 55.  Despite this likely scrivener's error and the ambiguity in these dates, the Court assumes for the purposes of this opinion that Defendants paid Hisami $8.00 per hour during her second and third periods of employment with Taka Sushi.

[4] The PSAC alleges that "between September 21, 2021 to the May 27, 2022, while [Hisami] worked on avergae [sic] 67 hours every two (2) weeks, she was paid only for around 57 hours of work each week."  PSAC ¶ 58.  The Court assumes Plaintiffs mean that Defendants paid Hisami for 57 hours of work for two weeks, not for a single week.

After informing Defendants, Hisami then took time off work to travel to Japan for a medical appointment. *Id.* ¶ 50. She left work on May 27, 2022, *id.* ¶ 140, and on May 29, 2022, Plaintiffs commenced the instant action against Defendants, *see* Compl., ECF No. 1. When Hisami returned from her trip and commenced her third period of employment at Taka Sushi — from about August 23, 2022 to September 17, 2022 — Defendants reduced her regular working schedule; Hisami alleges that Defendants made this change to her work hours in retaliation for having filed this lawsuit. PSAC ¶¶ 49, 51. Hisami's reduced regular working schedule ran from 4:00 PM to 9:30 PM on Wednesdays and Thursdays, 4:00 PM to 10:00 PM on Fridays, and 4:30 PM to 10:00 PM on Saturdays, for a total of 22.5 hours each week. *Id.* ¶ 49. While Hisami's pay remained the same, Defendants further retaliated against Hisami by throwing tips at her face rather than handing them to her, "not assigning [her] proper tasks," and isolating her from her co-workers. *Id.* ¶ 51.

Throughout Hisami's employment, her non-tipped work exceeded two hours or 20% of her workday. *Id.* ¶ 67. During that time, Defendants misappropriated Hisami's tips by requiring waitstaff to share 70% of their "counter top tips" with Defendants. *Id.* ¶¶ 68–69. Defendants also required Hisami to pay between $30 and $40 each week for any mistakes in customer orders. *Id.* ¶ 71.

Additionally, Defendants failed to provided Hisami with a written notice of her rate of pay or with a required minimum wage notice. *Id.* ¶¶ 72–73. They also failed to provide Hisami with statements of her weekly pay that accurately reflected their

contact information, Hisami's rate of pay, and her gross and net wages. *Id.* ¶¶ 74–75.

## II.   Plaintiff Taisei

Taisei worked as a packer and receptionist at Taka Sushi from about September 21, 2021 to May 27, 2022. *Id.* ¶ 76. Throughout his employment with Defendants, Taisei also helped clean and prepare tables for the restaurant's dine-in customers. *Id.* ¶ 78. His regular work schedule ran from 5:00 PM to 10:00 PM for dinner shifts one day a week, and from 4:30 PM to 10:00 PM for dinner shifts on another night of the week, for a total of 10.5 hours each week.[5] *Id.* ¶ 79. Defendants paid Taisei $18.00 per hour. *Id.* ¶ 82. However, Defendants paid Taisei for 10 hours, rather than 10.5 hours, for the two days that he worked each week. *Id.* ¶ 84.

While Taisei was working for Defendants, he did not have any breaks during shifts or a fixed time for lunch or dinner. *Id.* ¶¶ 80–81. Additionally, while Taisei's non-tipped work exceeded two hours or 20% of his workday, Defendants misappropriated Taisei's tips and never informed him of any tip deductions. *Id.* ¶¶ 85–87. Specifically, in December 2021, when the restaurant was particularly busy, Taisei received increased customer tips. *Id.* ¶ 88. Takafumi took Taisei's tips away and directed customers who tipped Taisei directly to instead hand tips to Takafumi. *Id.* ¶¶ 89, 96. After Taisei expressed that Takafumi should not take his tips,

---

[5] The PSAC alleges that Taisei worked from 5:00 PM to 10:00 PM "for five (5) hours for Friday dinner shifts" and from 4:30 PM to 10:00 PM "for five and a half (5.5) hours for Friday dinner shifts for a total of eleven hours each week." PSAC ¶ 79. The Court assumes that one of these dinner shifts occurred on a different day of the week. The Court further assumes based on the PSAC's allegations that Taisei worked 10.5 — rather than 11 — hours per week.

Takafumi and Rie refused to speak to Taisei and disparaged him.  *Id.* ¶¶ 91–94.
Takafumi and Rie stated that Taisei "is someone who will pick even two pennies up
from the floor," *id.* ¶ 94, and in 2020, Takafumi had "commented that wage-and-hour
attorneys are shit and criminals because they are using the ignorant Spanish people
to sue small restaurants.  These lawyers are like hyenas," *id.* ¶ 95.

From around May 28, 2022 to August 22, 2022, Taisei took time off work to
accompany Hisami on her travels to Japan.  *Id.* ¶ 77.  Upon Taisei's return,
Defendants did not allow him to return to work because Plaintiffs had initiated this
action against them.  *Id.*

As with Hisami, Defendants never provided Taisei with written notices of the
rates of pay or the minimum wage.  *Id.* ¶ 99.  Moreover, Taisei's paystubs did not
reflect the employer's contact information and information indicating how the pay
was calculated.  *Id.* ¶¶ 101–02.

## PROCEDURAL BACKGROUND

Plaintiffs initiated this action against Defendants on May 29, 2022.  Compl.
Plaintiffs' Complaint alleged that Defendants violated the Fair Labor Standards Act
("FLSA") and New York Labor Law ("NYLL") minimum wage requirements, overtime
wage requirements, prohibitions against illegal retention of tips, and prohibitions
against unlawful deductions.  *Id.* ¶¶ 100–37.  Additionally, the Complaint alleged
that Defendants violated the New York Labor Law by failing to pay Plaintiffs spread-
of-hours pay, to provide time-of-hire wage notice, and to provide wage statements.
*Id.* ¶¶ 138–49.  Plaintiffs brought the Complaint on behalf of themselves and

similarly situated collective action members.  *Id.* ¶ 99.  One other Plaintiff has since opted into this collective action.  Collective Action Consent, ECF No. 43.

On December 29, 2022, Defendants filed a pre-motion conference letter "in contemplation of a motion for judgment on the pleadings of portions of the Complaint."  Pre-Mot. Conf. Letter at 1, ECF No. 20.  Defendants made numerous arguments in support of their letter, including that Plaintiffs' earnings exceeded those required by federal minimum wage, Taisei's earnings exceeded those required by state minimum wage, and neither Plaintiff worked overtime.  *Id.* at 2–3.  In response, Plaintiffs requested leave amend their Complaint.  Opp'n to Pre-Mot. Conf. Letter, ECF No. 23.  On March 10, 2023, the Court granted Plaintiffs' application for leave to amend their Complaint and denied Defendants' motion for a pre-motion conference as moot.  Order dated Mar. 10, 2023.

Plaintiffs filed their First Amended Complaint ("FAC") on April 11, 2023.  FAC, ECF No. 31.  As relevant here, the FAC alleged that Defendants paid Hisami between $8.00 and $10.00 per hour during her employment.  *Id.* ¶¶ 54–55.  Moreover, like the initial Complaint, the FAC alleged that Defendants violated the minimum wage requirements under the FLSA (Count I) and NYLL (Count II), illegally retained Plaintiffs' tips in violation of the FLSA (Count III) and NYLL (Count IV), unlawfully kicked back Hisami's wages in violation of the FLSA (Count V) and NYLL (Count VI), and failed to provide wage notice (Count VII) and wage statements (Count VIII), in violation of NYLL.  *Id.* ¶¶ 104–37.  The FAC also added claims for retaliation under the FLSA (Count IX) and NYLL (Count X), *id.* ¶¶ 138–49, and withdrew the initial

Complaint's claims for failure to pay overtime wage and spread-of-hours pay. Both Plaintiffs bring Counts I–VI and VI–X; only Hisami brings Count V. Counts I, III, and V are brought on behalf of the FLSA Collective.

On April 18, 2023, Defendants moved for a pre-motion conference in anticipation of a motion to dismiss Plaintiffs' FAC. Second Pre-Mot. Conf. Letter, ECF No. 32. Plaintiffs' opposed Defendants' motion, Opp'n to Second Pre-Mot. Conf. Letter, ECF No. 36, and the Court directed the parties to brief Defendants' motion to dismiss, Order dated June 9, 2023. On August 23, 2023, Defendants filed a fully briefed motion to dismiss. Mot. to Dismiss, ECF No. 47.

In their motion, Defendants argue the Court should dismiss (1) Count I because the federal minimum wage is $7.25, and the FAC alleged that Hisami earned between $8.00 and $10.00 per hour and that Taisei earned $18.00 per hour; (2) Count III because, in part, Plaintiffs do not allege that any retained tips drove their wages below the federal minimum wage; (3) Count V because Hisami fails to allege that Defendants actually required her to kickback her wages or that any kickbacks reduced her wages below minimum wage; and (4) Count IX because Plaintiffs fail to plausibly plead that they were retaliated against. Mem. in Supp. of Mot. 7–12, ECF No. 47-1. Defendants argue that the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims or, in the alternative, should dismiss

Count II as to Taisei and Counts VII, VIII, and X as to Hisami and Taisei.[6]  *Id.* at 12–18.

Plaintiffs oppose Defendants' motion and cross-move to file a Second Amended Complaint to reflect "the true and accurate hourly rates paid to Plaintiffs."  Opp'n Br. 23, ECF No. 47-3.[7]  The PSAC is largely the same as the FAC, except it alters the allegations as to Hisami's pay in critical respects.  Whereas the FAC alleged that Defendants paid Hisami $8.00 per hour between May 15, 2019 and May 27, 2022, and $10.00 per hour between August 23, 2022 and September 17, 2022, FAC ¶¶ 54–55, the PSAC alleges that Defendants paid Hisami $7.00 per hour between May 15, 2019 and March 15, 2020, and $8.00 per hour between October 11, 2021 to September 17, 2022, PSAC ¶¶ 54–55.

---

[6] In their opening brief, Defendants also argued that the Court should dismiss Count IV as to Taisei.  Mem. in Supp. of Mot. at 13–14.  However, in their reply brief, Defendants state that, if the "Court exercises supplemental jurisdiction over Plaintiffs' state law claims, Defendants withdraw the Motion [to Dismiss] with respect to Plaintiffs' Fourth Cause of Action only."  Reply Br. 6, ECF No. 47-7.  Because, as discussed below, the Court continues to exercise supplemental jurisdiction over Plaintiffs' state law claims, the Court deems Defendants' motion to dismiss Count IV withdrawn.

[7] In support of their cross-motion, Plaintiffs attach an exhibit reflecting a production of Defendants' wage records.  Defendants contend that the Court should not consider that exhibit in adjudicating this motion.  The Court agrees.  "In reviewing a motion to dismiss, a court may consider, *inter alia,* (1) documents that are incorporated by reference into the complaint, and (2) documents that, even if not incorporated by reference, the defendant has notice of and that are 'integral' to the complaint."  *Done v. HSBC Bank USA*, No. 09-cv-4878, 2010 WL 3824142, at *2 (E.D.N.Y. Sept. 23, 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–54 (2d Cir. 2002)).  Defendants' production of wage records was neither incorporated by reference nor integral to the complaint.

On December 4, 2023, the Court directed Defendants to indicate whether, in light of Plaintiffs' cross-motion for leave to file their PSAC, they wished to re-file their motion to dismiss to address Plaintiffs' new allegations.  Order dated Dec. 4, 2023.  On December 11, 2023, Defendants filed a letter advising the Court that they did not wish to re-file their motion and requesting "that the Court apply Defendants' already-briefed arguments to the PSAC."  Letter dated Dec. 11, 2023.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Courts must "construe [the complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor."  *Sacerdote v. New York Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021).  However, courts must also "disregard conclusory allegations, such as 'formulaic recitation[s] of the elements of a cause of action.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

10

## DISCUSSION

Defendants move to dismiss Plaintiffs' claims under the FLSA (Counts I, III, V, and IX) and argue that the Court should decline to exercise supplemental jurisdiction over Plaintiffs' NYLL claims (Counts II, IV, VI, VII, VIII, and X). Mem. in Supp. of Mot. 7–12. In the alternative, Defendants argue that the Court should dismiss Count II against Taisei only and Counts VII, VIII, and X against both Hisami and Taisei. *Id.* at 12–18. Because the Court declines to dismiss Plaintiffs' claims under the FLSA, it continues to exercise supplemental jurisdiction over Plaintiffs' state law claims. Accordingly, the Court addresses Defendants' arguments for dismissal of Plaintiffs' claims under the FLSA and NYLL.

## I.   Count I (FLSA minimum wage)

Pursuant to the FLSA, "every employer shall pay to each of his employees a minimum of $7.25 an hour." *Johnson v. Equinox Holdings, Inc.*, No. 13-cv-6313, 2014 WL 3058438, at *3 (S.D.N.Y. July 2, 2014) (citing 29 U.S.C. § 206(a)). "An employee cannot state a claim for a minimum wage violation 'unless [his] average hourly wage falls below the federal minimum wage.'" *Id.* (quoting *Lundy v. Cath. Health Sys. of Long Island, Inc.,* 711 F.3d 106, 115 (2d Cir. 2013)). "To determine whether an employee was compensated above the required federal minimum wage, the Court must calculate the employee's average hourly wage," *Huang v. GW of Flushing I, Inc.*, No. 17-cv-3181, 2019 WL 145528, at *5 (E.D.N.Y. Jan. 9, 2019), which it does "by dividing his total remuneration for employment . . . in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid," *Lopez-Serrano v. Rockmore,* 132 F. Supp. 3d 390, 402

11

(E.D.N.Y. 2015) (quoting 29 CFR § 778.109).  Defendants argue that, applying this standard, the Court should dismiss both Hisami's and Taisei's claims under Count I.

### a.   Hisami

Defendants argue that the Court should dismiss Hisami's claim under Count I because the FAC alleges that Defendants paid her between $8.00 and $10.00 per hour, which exceeds the $7.25 federal minimum wage.  But the PSAC, which is the operative document for the purposes of this motion, alleges that between May 15, 2019 and March 15, 2020, Defendants paid Hisami $7.00 per hour, and that between October 11, 2021, and September 17, 2022, Defendants paid Hisami $8.00 per hour.  PSAC ¶¶ 54–55.  The PSAC also alleges that, between September 21, 2021 and May 27, 2022, Defendants paid Hisami for 57 hours of work over two weeks, even though she worked, on average, 67 hours over two weeks.  *Id.* ¶ 58.  Dividing Hisami's "total renumeration for employment" during those two weeks ($456.00 for 57 hours at $8.00 per hour) by "the total number of hours actually worked" by Hisami during that period (67 hours), Defendants paid Hisami roughly $6.81 per hour during that period.  Hisami thus plausibly alleges that, for at least some of her employment, Defendants paid her less than the $7.25 minimum required by the FLSA and, in turn, that her "hourly wage [fell] below the federal minimum wage."  *Johnson*, 2014 WL 3058438, at *3 (citations omitted).

The Court notes that "the FLSA allows an employer to pay 'tipped employees' an hourly rate less than the federal minimum wage by crediting a portion of the actual amount of tips received by the employee against the required hourly minimum

wage, but only if the employer informed the employee of the tip credit rules." *Andrade v. 168 First Ave Rest. Ltd.*, No. 14-cv-8268, 2016 WL 3141567, at \*4 (S.D.N.Y. June 3, 2016), *report and recommendation adopted*, No. 14-CV-8268, 2016 WL 3948101 (S.D.N.Y. July 19, 2016).  Therefore, it is possible that Defendants paid Hisami less than the minimum wage because they credited her tips against the required hourly minimum.  However, even if that were the case, Hisami alleges that Defendants "deprived [her] of notice that [they] intended not to pay minimum wage pursuant to a tip credit" and "misappropriated" her tips.  PSAC ¶¶ 68, 73.  Taken as true, those allegations indicate that Defendants did not satisfy the prerequisites that would entitle them to pay Plaintiffs less than the federal minimum wage pursuant to a tip credit.  The Court thus denies Defendants' motion to dismiss Count I as to Hisami.

Still, the Court must determine the applicable statute of limitations governing Hisami's claims under the FLSA.[8]  Pursuant to the FLSA statute of limitations, employees must bring actions "within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  Thus, if Defendants' conduct was willful, Hisami can recover for FLSA violations dating back to May 29, 2019, but if it was not willful, then Hisami cannot recover for FLSA violations pre-dating May 29, 2020.

---

[8] The FLSA statute of limitations is only an issue with respect to Hisami's FLSA minimum wage claims (Counts I, III, and V), as Plaintiffs allege that Taisei began working for Defendants in September 2021 (within the two-year statute of limitations).

"An employer willfully violates the FLSA when it 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by' the Act." *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (citation omitted). "[T]he mere allegation of willfulness is insufficient to allow an FLSA plaintiff to obtain the benefit of the three-year exception at the pleadings stage. Rather, a plaintiff must allege facts that permit a plausible inference that the defendant willfully violated the FLSA for that exception to apply." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 323 (2d Cir. 2021).

Here, Plaintiffs allege several facts that establish "a plausible inference that the [D]efendant[s]" acted willfully. *Id.* First, Plaintiffs allege that Defendants told Hisami that they do "not consider time after the close of the restaurant work time[,] even though the employees would need to clean up and continue working before they left." PSAC ¶ 59. That allegation indicates that Defendants knowingly declined to pay Plaintiffs for all hours that they worked. Second, Plaintiffs allege that Taisei complained that Takafumi "should not be taking his tips," which prompted Takafumi and Rie to "refuse[] to speak with Taisei." *Id.* ¶¶ 91–92. Plaintiffs thus allege that Defendants "were on notice of" certain aspects of Defendants' FLSA non-compliance "yet failed to take any corrective action," which can support a finding of willful conduct. *Lorenzo v. 12 Chairs BYN, LLC*, No. 22-cv-947, 2024 WL 1174426, at *4 (E.D.N.Y. Mar. 19, 2024) (citation omitted). And finally, Plaintiffs allege that Defendants "failed to keep full and accurate records of [their] hours and wages . . . in order to mitigate liability for their wage violations." PSAC ¶¶ 42–43. Courts have

14

found similar allegations that defendants "'purposefully evaded' the FLSA's recordkeeping requirements" to support an inference of willfulness.  *See Montoya v. Havana Cent. NY 2, LLC*, No. 23-cv-111, 2024 WL 874640, at *6 (S.D.N.Y. Jan. 8, 2024), *report and recommendation adopted*, 2024 WL 871206 (S.D.N.Y. Feb. 29, 2024).   Taking these allegations together, the Court concludes that Plaintiffs plausibly allege that Defendants acted willfully, and the three-year statute of limitations applies.

### b.   Taisei

The PSAC alleges that Defendants paid Taisei $18.00 per hour from September 2021 to May 2022.  PSAC ¶ 82.  Plaintiffs appear to allege that Defendants failed to pay Taisei the federal minimum wage because, even though Taisei's hourly rate exceeded the federal minimum, Defendants did not pay Taisei for all hours worked. Specifically, Plaintiffs allege that Defendants paid Taisei for 10 hours for the two days each week that he worked, even though Taisei worked 10.5 hours each week. *Id.* ¶ 84.  But even if Defendants only paid Taisei for 10 hours per week, his total weekly remuneration ($180.00) divided by his total hours worked per week (10.5) would still be $17.14 — well above the FSLA hourly minimum of $7.25.  Accordingly, the Court grants Defendants' motion to dismiss Count I as to Taisei.

## II.   Count II (NYLL minimum wage)

Like the FLSA, NYLL "guarantee[s] compensation for all work . . . engaged in by [covered] employees."  *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 472 (S.D.N.Y. 2015) (alterations in original) (quoting *Kuebel v. Black & Decker Inc.*, 643

F.3d 352, 359 (2d Cir. 2011)).  Under NYLL, the minimum wage in Nassau County (where Taka Sushi is located, Mem. in Supp. of Mot. 13) was $14.00 per hour in 2021 and $15.00 per hour in 2022, N.Y. Lab. Law § 652(1)(b).  Moreover, to calculate the employee's hourly rate of pay under NYLL, the Court "divid[es] the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." N.Y. Comp. Codes R. & Regs. 12, § 146-3.5(b).

Under Count II, Defendants only move to dismiss Taisei's claim.  Taisei alleges that he was paid at a rate of $18.00 per hour but was only compensated for 10 hours per week, even though he worked 10.5 hours per week.  PSAC ¶¶ 82, 84.  As above, dividing Taisei's total weekly earnings ($180) by the actual numbers of hours he worked during the work week (10.5) demonstrates that Defendants paid Taisei an hourly rate of $17.14.  That hourly rate exceeds the $14.00 and $15.00 per hour minimums set by NYLL.  Accordingly, the Court grants Defendants' motion to dismiss Count II as to Taisei.

## III.   Count III (FLSA illegal retention of tips)

Plaintiffs allege that Defendants required the waitstaff "to share 70% [of their tips] with the Defendants[] owners."  PSAC ¶ 69.  Plaintiffs contend that this practice violates the FLSA because 29 U.S.C. §§ 203(m) and (t) prohibit the "arrangement between the employer and tipped employee whereby any part of the tip received becomes the property of the employer."  *Id.* ¶¶ 113–16.  However, those provisions of the FLSA do not expressly prohibit employers from requiring their employees to

share tips with them.   Rather, those provisions set forth minimum wage requirements for "tipped employees" and "provide[] that, under certain circumstances, employers of 'tipped employees' may apply part of such employees' tips towards" the federal minimum wage.  *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 560 (S.D.N.Y. 2013) (citing § 203(m)).

While the FLSA sets certain "conditions for an employer to take a tip credit," those "conditions apply only when the employer pays the employee below minimum wage and relies on a tip credit to supplement that wage."  *Id.*  In other words, the FLSA "prohibits retaining tips only to the extent that the employer then claims a tip credit and pays less than the minimum wage."  *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 40 n.9 (E.D.N.Y. 2015) (citation omitted).  Plaintiffs' claim that Defendants unlawfully retained their tips thus appears to be an alternative theory supporting their FLSA minimum wage claim.  For the reasons discussed *supra* at I.a., the Court grants Defendants' motion to dismiss this claim as to Taisei but denies it as to Hisami.

## IV.   Count V (FLSA unlawful kickbacks)

"Under the FLSA and associated regulations, 'if an expense is deducted from an employee's paycheck, included in the calculation of wages or the employee is required to purchase the item at his own expense, and the cost of the item reduces the employee's wage in any workweek below the minimum wage, the expense will be considered a "kickback," and the employer will have violated the FLSA.'"  *Tecocoatzi-Ortiz v. Just Salad LLC*, No. 18-cv-7342, 2022 WL 596831, at *12 (S.D.N.Y. Feb. 25,

2022) (quoting *Salazar-Martinez v. Fowler Bros., Inc.*, 781 F. Supp. 2d 183, 191 n.5 (W.D.N.Y. 2011)).  That is because "wages cannot be considered to have been paid" under the FLSA "unless they are paid finally and unconditionally or free and clear." 29 C.F.R. § 531.35 (internal quotation marks omitted).  Therefore, "[t]he wage requirements of the [FLSA] will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee."  *Id.*

Plaintiffs allege that Defendants violated the FLSA's prohibition against kickbacks by requiring Hisami "to pay between thirty dollars ($30) to forty dollars ($40) out of pocket each week for any mistakes in the customer orders," PSAC ¶ 71, which brought her "already subpar hourly minimum wage further below the hourly federal minimum wage," *id.* ¶ 123.  Defendants argue that this allegation fails to plausibly state a FLSA kickback violation because "Hisami does not allege that she actually made or paid for mistakes in customer orders," only that "she would be 'required' to do so," and that, in any event, "Hisami fails to allege that any such 'kickback' reduced her wage below the FLSA minimum wage."  Mem. in Supp. of Mot. at 10–11.[9]

Defendants parse Plaintiffs' allegations too thinly.  The PSAC states that by requiring Hisami to pay $30 to $40 each week for mistakes in customer orders,

---

[9] Defendants do not dispute that requiring an employee to pay her employer for mistakes in customer orders would constitute a kickback if such payments reduced the employee's wages below the federal minimum.  Accordingly, the Court assumes that such payments would constitute unlawful kickbacks for the purposes of this opinion.

Defendants reduced Hisami's take-home pay below her "already subpar hourly minimum wage."  PSAC ¶ 123.  In other words, Hisami alleges not only that Defendants informed her that such payments *would* be required in the event of mistakes, but that mistakes actually *did* result in such required repayments and that this had the practical effect of further reducing her wages.  "[D]rawing all reasonable inferences in the plaintiffs' favor," *Sacerdote*, 9 F.4th at 106–07, these assertions plausibly allege that Hisami was required to — and did — pay Defendants between $30 to $40 each week for mistakes in customer orders.  Those assertions, together with Plaintiffs' specific allegations regarding Hisami's rate of pay (between $7.00 and $8.00 per hour) and the hours that she worked throughout her employment with Defendants, plausibly allege that these "kickbacks" reduced Hisami's wages below the federal minimum wage.  For example, Hisami alleges that between September 2021 and May 2022, she worked 33.5 hours per week and, for much of that time, was paid $8.00 per hour.  PSAC ¶¶ 48, 55.  Even assuming Defendants paid Hisami for every hour she worked during a given week (which she disputes), if they required her to pay back $30 in that same week, her "average hourly wage" would be approximately $7.10 — which is plainly below the required minimum wage.  *Lopez-Serrano*, 132 F. Supp. 3d at 402.  The Court thus denies Defendants' motion to dismiss Count V.

## V.     Counts VII and VIII (NYLL failure to provide notice)

Pursuant to the New York Wage Theft Prevention Act ("WTPA"), employers must provide employees with notice "at the time of hiring" of, among other

information, "the rate or rates of pay and basis thereof," and "allowances, if any, claims as part of the minimum wage, including tip, meal, or lodging allowances." N.Y. Lab. Law § 195-1(a).  Employers must also "furnish each employee with a statement with every payment of wages" that includes "the dates of work covered by that payment of wages," the name and contact information of the employer, "rate or rates of pay and basis thereof," "gross wages[,] deductions[, and] allowances, if any, claimed as part of the minimum wage," and "net wages."  N.Y. Lab. Law § 195-3.  "An employer who fails to provide the required notices and statements is liable for statutory damages."  *Lopez v. Martha's Cocina Mexicana, LLC*, No. 23-cv-2053, 2023 WL 9603828, at *8 (E.D.N.Y. Dec. 27, 2023).

Count VII of Plaintiffs' PSAC alleges that Defendants never provided Plaintiffs with the information required by § 195-1(a).  Count VIII alleges that Defendants failed to provide Plaintiffs with paystubs containing the information required by § 195-3.  Defendants argue that the Court should dismiss these claims because Plaintiffs lack Article III standing to bring them.

"The requirements of Article III standing are well established: '[A] plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'"  *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 141 (2d Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).  An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized,

and (b) 'actual or imminent, not conjectural or hypothetical.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).

Importantly, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) (citation omitted). Rather, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* In *TransUnion*, the Supreme Court reiterated that principle and emphasized that "[a]n 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'" *Id.* at 442 (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)). The Court further indicated that for an informational injury to satisfy the injury-in-fact requirement, a plaintiff must identify "'downstream consequences' from failing to receive the required information." *Id.* Here, Defendants argue that Plaintiffs have only alleged "informational injuries, which do not convey Article III standing." Mem. in Supp. of Mot. 15.

"Defendants' argument is a familiar one that has been consistently raised in wage and hour cases since *TransUnion* was decided in 2021." *Lipstein v. 20X Hosp. LLC*, No. 22-cv-04812, 2023 WL 6124048, at *8 (S.D.N.Y. Sept. 19, 2023). But "while the issue is often presented, the Second Circuit has not yet weighed in on the particular topic, and '[c]ourts within this Circuit . . . have come to differing conclusions.'" *Isayeva v. Diamond Braces*, No. 22-cv-4575, 2024 WL 1053349, at *15

(S.D.N.Y. Mar. 11, 2024) (some alterations in original) (quoting *Lipstein*, 2023 WL 6124048, at *8).

As a general matter, courts in this Circuit have found the injury-in-fact requirement satisfied where plaintiffs made specific allegations as to the harm — or "tangible downstream consequences" — they suffered as a result of their employers' WTPA violations. *Lipstein*, 2023 WL 6124048, at *9–10 (finding plaintiff "adequately pleaded injury in fact" by alleging "that he was hindered in his ability to contest the wage and hour deficiencies to which he was subjected by his employer"); *see also Isayeva*, 2024 WL 1053349, at *17 (holding plaintiffs had standing where they alleged that defendants' violations of the WTPA "hindered [their] ability, at the time they were paid, to discover their underpayment and advocate for themselves," and "enable[d] the actual underpayment of their wages"); *Mateer v. Peloton Interactive, Inc.*, No. 22-cv-740, 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022) (denying standing challenge to WTPA claim because the complaint alleged "that Defendant's violation 'resulted in the underpayment of wages'").

On the other side of that coin, courts have found Article III standing wanting where plaintiffs failed to "articulate[] any cognizable actual injury resulting from" defendants' failure to provide the wage notices and statements required by New York law. *Lopez*, 2023 WL 9603828, at *9 (dismissing WTPA claims for lack of standing because plaintiff failed to allege facts supporting an assertion of harm); *see also Bayne v. NAPW, Inc.*, No. 18-cv-3591, 2024 WL 1254197, at *6 (E.D.N.Y. Mar. 25, 2024) (dismissing WTPA claims for lack of standing because plaintiffs failed to "provide[]

any evidence that they have suffered an injury or any 'downstream consequences' resulting from [d]efendants' alleged failure"). Other courts have concluded that *TransUnion* did not alter the traditional pleading requirements for WTPA claims because "if an employer's failure to provide wage statements or wage notices were considered a purely technical violation, then no employee would ever have standing to sue under the WTPA and the statutory damages provisions would be rendered meaningless and unenforceable." *Lin v. Bund Dumpling House Inc.*, No. 22-cv-6989, 2023 WL 7688886, at *8 (E.D.N.Y. Sept. 26, 2023), *report and recommendation adopted*, No. 22-cv-6989, 2024 WL 1259358 (E.D.N.Y. Mar. 25, 2024); *see also Bueno v. Buzinover*, No. 22-cv-2216, 2023 WL 2387113, at *3 (S.D.N.Y. Mar. 7, 2023) (holding that employees need not allege specific downstream injuries to have Article III standing because denying an employee the required notice "can impinge on an employee's interests not only in being paid what is owed, but also in being able to advocate for the receipt of proper pay").

Here, Plaintiffs allege that Defendants failed to provide them with the requisite wage notice, which deprived them of "notice of what the minimum wage was and that Defendants were not paying it," and "that Defendants [intended] not to pay minimum wage pursuant to a tip credit." PSAC ¶¶ 73, 100. They further allege that Defendants failed to provide legally required information on their paystubs, *id.* ¶ 102, which "obscured from [Plaintiffs], and facilitated, Defendants' scheme to pay [Plaintiffs] less than the minimum wage," *id.* ¶ 75.

23

While some courts have held that it is not enough to allege that an employer's lack of notice "facilitated" underpayments because, in part, "[b]eing able to challenge [the] underpayment sooner would have resulted in [p]laintiff bringing the same lawsuit, just earlier," *Shi v. TL & CG Inc.*, No. 19-cv-08502, 2022 WL 2669156, at *9 (S.D.N.Y. July 11, 2022), others have reached the opposite conclusion, *see Isayeva*, 2024 WL 1053349, at *17; *Lipstein*, 2023 WL 6124048, at *10.  This Court finds the latter set of cases more persuasive.  Even assuming that *TransUnion* requires a plaintiff to plead that a distinct injury resulting from an employer's WTPA violation, "[t]he delay in compensation that results when someone lacks the full information needed to advocate for appropriate wages deals an injury that is distinct from any underpayment itself."  *Lipstein*, 2023 WL 6124048, at *10; *see also MetCalf v. TransPerfect Translations Int'l, Inc.*, 632 F. Supp. 3d 319, 340 (S.D.N.Y. 2022) ("If putative class members indeed reviewed the wage statements and, based on this review, wrongly believed that they were being paid fully and therefore failed to take action to correct the situation, this would likely constitute 'concrete harm[.]'").  Put simply, allegations that an employer's WTPA violations hindered an employee from vindicating her rights constitute the sort of "downstream consequences" that can transform an informational injury into one that passes constitutional muster.

Accordingly, Hisami's allegations that Defendants' failure to provide her with wage notice and statements concealed their underpayment of her wages, together with her allegations that Defendants did, in fact, fail to pay her minimum wage, are sufficient to confer on her Article III standing.  However, as discussed *supra* at I.b.,

Taisei has not plausibly alleged that Defendants paid him less than minimum wage. Consequently, Taisei has also not alleged that he suffered any "adverse effects" from Defendants' allegedly defective wage notices and statements, *TransUnion*, 594 U.S. at 442, and his claims must be dismissed for lack of standing.

## VI.   Counts IX (FLSA retaliation) and X (NYLL retaliation)

Plaintiffs allege that Defendants unlawfully retaliated against them in violation of the FLSA (Count IX) and NYLL (Count X).  "Pursuant to Section 215(a)(3) of the FLSA, it is unlawful for any employer 'to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted . . . any proceeding under or related to this chapter.'" *Rosenbaum v. Meir*, 658 F. Supp. 3d 140, 149 (E.D.N.Y. 2023) (quoting 29 U.S.C. § 215(a)(3)).  Similarly, "NYLL makes it unlawful for an employer to 'discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee . . . because such employee has made a complaint . . . that the employer has engaged in conduct that the employee . . . believes violates [NYLL].'"  *Id.* (some alterations in original) (quoting N.Y. Lab. Law § 215(a)(1)).  Because "[t]he pleading requirements for retaliation claims under both the FLSA and NYLL 'significantly overlap,'" *id.* at 149–50 (citation omitted), "the Court's analysis of the anti-retaliation provision of the FLSA is equally applicable to Plaintiff's anti-retaliation claims under" NYLL, *Li v. Chinese Nail Salon Ass'n of E. Am. Inc.*, No. 20-CV-6390, 2024 WL 866248, at *3 (E.D.N.Y. Feb. 28, 2024).

Courts in this Circuit "evaluate FLSA and NYLL retaliation claims under the three-step burden-shifting framework established by *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973)." *Id.* Under that test, a plaintiff must first make a prima facie showing of retaliation by demonstrating "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010). "Once the plaintiff establishes a prima facie case of FLSA retaliation, the burden shifts to the defendant to articulate a 'legitimate, non-discriminatory reason for the employment action.'" *Id.* (citation omitted). If the defendant does so, the burden shifts back to the plaintiff to "produce 'sufficient evidence to support a rational finding'" that the defendant's proffered reason was false "and that more likely than not discrimination was the real reason for the employment action." *Id.* at 53–54. "At the pleading stage, however, 'the Court does not specifically apply the *McDonnell Douglas* burden-shifting test to determine whether Plaintiff has stated a retaliation claim, but rather generally assesses the plausibility of Plaintiff's claim based on the facts alleged in the Complaint.'" *Jian Zhong Li v. Oliver King Enterprises, Inc.*, No. 14-cv-9293, 2015 WL 4643145, at *2 (S.D.N.Y. Aug. 4, 2015) (citation omitted).

Here, Plaintiffs allege that Defendants retaliated against them after they returned from a three-month trip to Japan, during which Plaintiffs initiated the instant lawsuit. Plaintiffs traveled to Japan from May 27, 2022 until August 22, 2022 and initiated this action on May 29, 2022. They allege that, upon their return, Defendants retaliated against Taisei by precluding him from returning to work and

against Hisami by declining to assign her regular tasks, isolating her, reducing her working hours, and throwing tips at her face instead of handing them to her normally.

Defendants do not appear to contest that Plaintiffs meet the first and second prongs of the *prima facie* case of retaliation — participation in a protected activity and an adverse employment action — but contend that Plaintiffs' claim fails to allege causation at prong three. In their view, Plaintiffs do not plausibly allege that their protected activity (initiating the instant lawsuit) caused the adverse employment actions because they continued to employ Hisami even after the three-month absence and permitted her to work 22.5 hours a week.[10] Defendants also indicate that they refused to allow Taisei to return to work because of his three-month absence, not because of the lawsuit.[11]

A plaintiff may allege a causal "connection either 'directly, by alleging facts of a retaliatory animus against him[,]' or 'indirectly, either by showing a temporal relationship in which the protected activity was followed closely in time by discriminatory treatment, or by other circumstantial evidence.'" *Wang v. Palmisano*, 51 F. Supp. 3d 521, 539 (S.D.N.Y. 2014) (citation omitted). Plaintiffs do not allege

---

[10] Defendants also argue that they gave Hisami a $2.00 raise, which undermines her retaliation claim. However, while Plaintiffs' FAC alleged that Defendants gave Hisami a $2.00 raise on August 23, 2022 (when she returned from Japan), FAC ¶ 55, Plaintiffs' PSAC alleges otherwise: that Defendants gave her a $1.00 raise in October 2021 and continued paying her at that rate until she left her employment with Defendants in September 2022, PSAC ¶ 55. Because this motion to dismiss concerns the factual allegations in the PSAC, the Court declines to consider factual allegations in the no-longer-operative complaint.

[11] Because Defendants only challenge causation, the Court only addresses that element herein.

facts of retaliatory animus, but they do allege a temporal relationship between their protected activity and the adverse employment actions.  Specifically, Plaintiffs allege that the adverse treatment occurred when they returned from their trip to Japan in late August 2022 — nearly three months after they initiated their complaint.

The Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action."  *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013) (quoting *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)).  Accordingly, courts "exercise[] discretion over what inferences to draw from temporal proximity 'in the context of particular cases.'"  *Pabon v. Barclays Bank PLC*, 2015 WL 5834796, at *3 (S.D.N.Y. Sept. 30, 2015) (quoting *Summa*, 708 F.3d at 128).  Moreover, while courts have frequently held "that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation," *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) (collecting cases), longer temporal lapses can support an inference of causation when the adverse actions occurred at the employer's first opportunity to retaliate, *see Summa*, 708 F.3d at 128.  For example, in *Summa*, the Court held that while four months had passed between an employee's protected activity and the adverse employment action, that temporal connection was "enough, in and of itself, . . . to permit a reasonable jury to find causation," because "the adverse action occurred at the first actual opportunity to retaliate."  *Id.*

28

That is precisely what Plaintiffs have alleged here. Defendants took the adverse actions — precluding Taisei from returning to work and isolating Hisami, assigning her improper tasks, reducing her hours, and throwing tips at her face — as soon as Taisei and Hisami returned from Japan. While Plaintiffs were in Japan, Defendants could not have altered Hisami's work schedule and other working conditions. Nor could they have declined Taisei the opportunity to return to work. Therefore, in this context, the temporal connection between Plaintiffs initiating this action and the alleged retaliatory acts suffices to plausibly allege causation. That is particularly true because Plaintiffs have also alleged "other circumstantial evidence," *Wang*, 51 F. Supp. 3d at 539, to support an inference of causal connection. That is, the PSAC alleges that Defendant Takafumi has described wage-and-hour attorneys as "criminals" and "hyenas," PSAC ¶ 95, which further supports an inference that Defendants harbored animus towards Plaintiffs' wage-and-hour lawsuit.

Perhaps a jury would find, as Defendants argue, that Defendants declined Taisei the opportunity to return to work because he "left for three months and had no personal medical reason to do so." Reply Br. 10. But at this juncture, the PSAC has done enough to plausibly allege that Defendants took this action in retaliation for Plaintiffs initiating their lawsuit. Moreover, that Defendants "continued to employ [Hisami] even after a three-month absence," and "permitted her to work 22.5 hours per week," Mem. in Supp. of Mot. 11–12, fails to break the causal chain Plaintiffs alleged, particularly in light of Plaintiffs' allegations that Defendants reduced

Hisami's working hours immediately after she returned to work in August 2022, PSAC ¶ 140.  The Court thus denies Defendants' motion to dismiss Counts IX and X.

## **CONCLUSION**

For the foregoing reasons, the Court grants Defendants' motion to dismiss Counts I, II, III, VII, and VIII as to Plaintiff Taisei; denies Defendants' motion to dismiss Counts IX and X as to Plaintiff Taisei; and denies in its entirety Defendants' motion to dismiss the claims brought by Plaintiff Hisami.  Additionally, the Court grants Plaintiffs' cross-motion for leave to file the PSAC.

SO ORDERED.


_____

*/s/ NRM*

NINA R. MORRISON
United States District Judge

Dated:      August 20, 2024
            Brooklyn, New York